IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| COTTO-VAZQUEZ, ET AL.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, ET AL.<br><br>Defendants. | CIV. NO.: 16-2807 (SCC) |

**OPINION AND ORDER**

Miguel Angel Cotto-Vázquez and his wife, Melissa Guzmán-Quiñones sued the United States of America, the Commissioner of the Internal Renevue Service ("IRS"), and the IRS, seeking a refund of $2,505,060.31 for overpaid taxes and penalties. The United States of America moved to dismiss the Amended Complaint's Third Court for lack of subject matter jurisdiction. *See* Docket No. 29. Plaintiffs filed an opposition or, in the alternative, a request to stay the

adjudication of the Motion to Dismiss. Docket No. 37.[1] A reply and sur-reply followed. Docket Nos. 41 and 45.

## I. Background

Plaintiff Miguel Cotto is a professional boxer. During his career, Mr. Cotto signed a Promotional Agreement and several Championship Bout Agreements with an entity known as Top Rank, Inc. ("Top Rank"). *See* Docket No. 26 at pg. 4. Mr. Cotto obtained compensation for those agreements. *Id*.

Prior to filing this action, Mr. Cotto and his wife spent approximately seven years litigating an administrative claim for refund before the IRS. They sought a refund of $6,829,161.30, alleging that they had overpaid taxes, interests, and penalties, attributable to tax years ending in December 31, 2005, through 2008. *See* Docket No. 29-2. After an adverse determination and subsequent appeal, plaintiffs filed suit in

---

1 Plaintiffs argue that in order to fully develop an argument in opposition to the motion to dismiss, they need some discovery that is still outstanding. Accordingly, they seek a stay until discovery of the administrative documents is completed. Docket No. 37.

federal court. Docket Nos. 1 and 26. The Amended Complaint's Third Cause of Action, which is the only count that defendants seek to dismiss, claims a refund for overpayment of taxes attributable to the exploitation of Mr. Cotto's intangible property rights for $1,084,975. Docket No. 26 at pg. 20.

**II. Analysis**

The defendant challenges the Court's subject matter jurisdiction over Count III of the Amended Complaint. The United States avers that the claims included substantially vary from the claims raised in plaintiffs' administrative refund claim $1,084,875.00.

Pursuant to 26 U.S.C. § 7422(a), no taxpayer may bring a suit in federal court to recover a tax refund unless a claim for refund or credit has already been filed with the IRS. The regulations direct that requests for tax refunds will only be granted in certain circumstances and require that the claim "set forth in detail each ground upon which a credit or a refund is claimed and facts sufficient to apprise the

Commissioner of the exact basis thereof." 26 C.F.R.§ 301.6402-2(b)(1). In a tax refund suit, "[t[hese rules have been interpreted as creating a 'substantial variance' rule," which precludes a taxpayer from presenting claims that substantially vary the legal theories and factual basis contained in his administrative claim. *See Frank Armstrong, Jr. Trust ex rel. Armstrong v. U.S.*, 132 F.Supp.2d 421, 424-25 (W.D.Va. 2001)(citing *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed.Cir.2000)).

Our task is to examine the administrative documents on the record, and determine whether plaintiffs advanced to the IRS their legal theory for refund on taxes paid on compensation received from the exploitation of Mr. Cotto's "intangible rights." If plaintiffs' failed to allege with sufficient specificity their intangible rights claim during the administrative proceedings, they forfeited their right to include that claim in the federal suit.[2]

---

2   According to the Government, plaintiffs' motion "merely mention[ed] an assignment of intangible rights as a 'condition' to compensation."

"In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover." *United States v. Janis*, 428 U.S. 433, 440 (1976)(citing *Lewis v. Reynolds*, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932)); *see also*, *United States v. Rexach*, 482 F.2d 10, 17 (1st Cir. 1973)(in tax collection actions, "the burdens of both going forward and ultimate persuasion are on the taxpayer.").

Our starting point is Count III of the Amended Complaint, which claims a refund of $1,084,875.00. Plaintiffs' refund claim is predicated on an argument that the gains from the sale of Mr. Cotto's intangible property rights, i.e. his name, image and likeness, comes from Top Rank's right to exploit these rights in perpetuity. Mr. Cotto posits that he transferred or sold his rights, including his intangible property rights, to Top Rank. Therefore, he moves the Court to allocate a portion of the Agreement Compensation to the sale of his intangible property rights. Mr. Cotto proposes that 25% of the

---

Docket No. 42 at pg. 5.

compensation "should be earmarked for the gain from the sale of his intangible property rights." Docket No. 26 at pg. 22. In the alternative, he asks that the grant of his intangible property rights be considered a license. According to Mr. Cotto, gains from the exploitation of these rights should be sourced by his residence, Puerto Rico.

The government counters that Mr. Cotto did not present any of these claims to the IRS during the administrative proceeding. Instead, plaintiffs "exclusively relied on a time-basis allocation method to allocate income to Puerto Rico based on 26 C.F.R. § 1.861-4(b)(2)(i)." *See* Docket No. 42 at pg. 3.

However, a review of plaintiffs' Refund Claim, (the "Claim"), dated January 21, 2014 shows that they relied on other theories beyond the time-basis allocation. *See* Docket No. 29-2. In page 2 of the Claim, plaintiffs state that their refund claim is based, partly, on the rights granted to Top Rank. According to the document: "Under the contract provisions, Mr. Cotto is also granting Top Rank many rights

in exchange for the compensation. Therefore, the compensation attributable to such rights should be considered to determine the proper source of income." *Id.*

In stating their position, plaintiffs state the following: "The IRS-PR proposed adjustments do not consider the fact that the compensation received is related to services performed for a period of time and not only attributable to the day of the event. **In addition, the IRS-PR did not consider the fact that the compensation paid to Mr. Cotto includes the rights granted to Top Rank**."[3] *Id.* at pg. 7. (Emphasis supplied).

On July 28, 2015, the IRS issued a determination letter whereby they determined that all the income derived from Mr. Cotto's Championship Bout Agreement with Top Rank was 100% US source income. *See* Docket No. 29-8 at pg. 2. Subsequently, in their Request for Appeal dated August 26, 2015, Plaintiffs listed the six main reasons why they disagreed with the IRS's decision. *Id.* One of these six points was the

---

[3] Including his intangible rights.

exploitation of Mr. Cotto's intangible rights.[4] *Id.* at pg. 9. The Appeal states:

> Furthermore, with reference to personal rights surrendered by Mr. Cotto, recent case law established that when an athlete has a global image, name and likeness rights, which was marketed within and [sic] without the US, it would be unreasonable to determine that the compensation associated with the assignment of such personal rights be considered 100% US income.

Lastly, it is telling that the IRS discusses the theory included in the Amended Complaint's Count III in the Appeals Case Memorandum. *See* Docket No. 37-1. At page 8, the IRS frames one of the controversies as "the issue of the proper allocation between endorsement income between royalty and personal service income…" *Id*. Furthermore, the IRS discusses the *Kramer v. Commissioner* case, in which the tax court delved into the classification of royalties received by the petitioner, a U.S. tennis champion. In *Kramer*, the tax court

---

4  Although the letter does not use the term "intangible rights", it refers to Mr. Cotto's name, likeness, privacy, photographs and biographical materials, which are all part of his intangible rights.

allocated 70 percent of the royalties received by Kramer as compensation for the grant of use of his name, signature, etc…, and 30 percent for payment of services that qualified as "earned income." *Id*. at page 9.

Finally, in the **Discussion and Analysis section**, the Appeals Memorandum cites and analyzes the grant of rights to use Mr. Cotto's "image…name, likeness and biographical materials", pg. 16, and concludes that it was solely for the purpose of advertising and promoting the bout. For that reason, the IRS determined that "all of the consideration for the bouts fought in the U.S. is U.S.-sourced income." *Id*. at 18. The analysis and case law cited support the proposition that the IRS did consider and entertain Mr. Cotto's Third Court claims at the administrative level.

Therefore, the side-by-side examination of the administrative record and the Third Count leads me to conclude that plaintiffs put the IRS on notice during the administrative phase of the claims set forth in the Amended Complaint.

As a final point, we do not think it is necessary to delay the ruling on this motion pending outstanding discovery. There is sufficient information on the record to make a finding of whether the substantive variance rule is applicable here. Plaintiffs' request to stay adjudication of the motion is denied.

**III. Conclusion**

I find that plaintiffs' claims in Count III of the Amended Complaint do not represent a substantial variation of the legal theories and factual bases set forth in their administrative claim. Therefore, the Motion to Dismiss is denied. Plaintiffs' motion to stay is also denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of February, 2018.

S/ SILVIA CARREÑO-COLL
UNITED STATES MAGISTRATE JUDGE