# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MIGUEL ÁNGEL COTTO-VÁZQUEZ, et al.<br><br>Plaintiffs<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.<br><br>Defendants | CASE NO. 16-cv-2807 (SCC) |

## JOINT PROPOSED PRETRIAL ORDER

**COME NOW** Miguel Ángel Cotto-Vázquez ("Mr. Cotto") and his wife Melissa Guzmán-Quiñones (collectively, the "Plaintiffs"), and defendant, The United States of America, who respectfully submit their Joint Proposed Pretrial Order:

## I. COUNSEL FOR THE PARTIES

**Plaintiffs:**

Plaintiffs are represented by Rafael M. Santiago Rosa, Josué A. Rodríguez Robles, and Mario E. Dávila from Marichal, Hernández, Santiago & Juarbe, LLC, PO Box 190095, San Juan, PR 00919-0095. Email addresses: rsantiago@mhlex.com; jrodriguez@mhlex.com; mdavila@mhlex.com. Telephone number: 787-753-1565. Fax number: 787-753-1704.

**Defendant:**

The United States of America is represented by Beatriz T. Saiz, Gokce T. Yurekli, and William J. Harrington, Trial Attorneys, Tax Division, United States Department of Justice, P.O. Box 227, Washington, DC 20044. Email addresses: Beatriz.T.Saiz@usdoj.gov;

Gokce.T.Yurekli@usdoj.gov; William.J.Harrington@usdsoj.gov. Telephone number: (202) 307-6585. Fax number: (202) 514-6866.

## II. FACTUAL CONTENTIONS

### Plaintiff's Factual Contention:

Miguel Angel Cotto-Vázquez ("Mr. Cotto") is a retired professional boxer whose career began in 2001 and evolved to the point of becoming world boxing champion in four different weight divisions, an achievement which to date no other Puerto Rican boxer has accomplished.

On April 16th, 2012, nineteen (19) days before Mr. Cotto's bout against the well-known world champion boxer Floyd Mayweather, the Internal Revenue Service's ("IRS") regional office at Las Vegas ("IRS-LV") issued a notice of levy ("Notice of Levy") against the Plaintiffs in the aggregate amount of $6,751,909.95. The Notice of Levy, as subsequently amended, required complete payment of the aforesaid amount on/or before April 30th, 2012.

Faced with the prospect of a very public seizure of his earnings from the Mayweather bout, the Plaintiffs paid in full the aggregate amount of taxes purportedly owed by them as per the Notice of Levy. As a result, Plaintiffs made payments to the IRS for income taxes attributable to taxable years ended as of December 31st, 2005, 2006, 2007 and 2008 ("Tax Years"), in the aggregate amount of $7,670,828.18,[1] which included principal, interest, and penalties.

During the Tax Years, Mr. Cotto entered into a total of eight Bout Agreements with Top Rank, Inc., a Nevada corporation engaged in the negotiation, promotion, and staging of boxing events ("Top Rank"). The eight bouts object of the aforesaid agreements took place in the

---

[1] After the receipt of the Notification of Levy, Mr. Cotto paid the IRS $6,598,217.18. Prior to this, Mr. Cotto had paid the uncontested portion of the IRS-PR assessment in the amount of $1,072,611 on January 25, 2012.

continental United States. During those years, Plaintiffs were—and still are —legally married and bona fide residents of Caguas, Puerto Rico.

The Bout Agreements provided compensation to Mr. Cotto for items such as the "purse", training allowances, signing bonuses, Pay-Per-View bonuses, promotional services, and publicity and promotion; amongst others. Pursuant to the Bout Agreements, Mr. Cotto granted all exclusive worldwide rights to the bouts in perpetuity to Top Rank; including, without limitation, exclusive rights to his name, image and likeness.

Top Rank generated revenues from the following sources: (i) Gate Revenue; (ii) Foreign Television; (iii) Television Fees; and (iv) Advertising and Sponsorship.

During the relevant period, Plaintiffs delegated upon Miguel Cotto-Carrasquillo ("Mr. Cotto Sr."), to handle all matters related to his business, finances, and taxes. Mr. Cotto Sr., in turn, hired a Certified Public Accountant ("CPA") named Ramón F. Sanabria ("CPA Sanabria"), a tax preparer duly certified as such by the Internal Revenue Service ("IRS") and the PR Treasury Department, to assist Plaintiffs with the compliance of their tax obligations for taxable years ended on December 31st, 2005, 2006 and 2007.

For the compliance of Plaintiffs' tax obligations for taxable year 2008, Mr. Cotto Sr. retained the services of a different CPA named Luis Orlando Ortiz ("CPA Ortiz").

Mr. Cotto Sr. provided the following documentation and/or information to both CPA's:  (i) social security number, date of birth and all the relevant personal information of Plaintiffs and their children;  (ii) the supporting evidence for deductions and expenses claimed, such as PR Boxing Association commission statement, phone bills, travel and meal expenses, among others; and (iii)

3

**IRS 1099 Forms** issued by Top Rank regarding income earned by Cotto pursuant to the Bout Agreements.

After receiving the aforesaid documentation and information, both CPA Sanabria and CPA Ortiz prepared Forms 1040-PR on behalf of the Plaintiffs for each of the Tax Years as described above and signed said federal tax returns in their capacity as paid tax preparers duly authorized by the IRS.

After presumably evaluating the information and documents submitted to them by Mr. Cotto Sr. and notwithstanding IRS 1099 Forms issued by Top Rank for each of the Tax Years were delivered to them, both CPA Sanabria and CPA Ortiz erroneously concluded that a 1040-PR return was the only federal tax return that the Plaintiffs were required to file.[2].

Consequently, the entire income generated from the Bout Agreements was exclusively reported in Forms 1040-PR for the Tax Years and the corresponding self-employment taxes were paid. However, as a direct result of the advice received from their tax preparers, Plaintiffs did not file 1040-US tax returns for the Tax Years and, thus, failed to pay the corresponding income taxes for the Tax Years.

In 2009, the IRS's regional office in Puerto Rico ("IRS-PR") commenced an income tax audit regarding the income earned by Plaintiffs from the Bout Agreements. During this process, Plaintiffs requested the "non-assertion" of penalties on the grounds that they had followed the

---

[2] ***Statement on Standards for Tax Services N. 1, Tax Returns Positions,*** issued by the Tax Executive Committee of the American Institute of Certified Public Accountants ("AICPA") states: "A member should determine and comply with the standards, if any, that are imposed by the applicable taxing authority with respect to recommending a tax return position, or preparing or signing a tax return." ¶ 4. For purposes of these standards a "tax return position" is (i) a position reflected on a tax return on which a member has specifically advised a taxpayer or (ii) a position about which a member has knowledge of all material facts and, on the basis of those facts, has concluded whether the position is appropriate. ¶ 1(a).

advice provided to them by both CPA Sanabria and CPA Ortiz.  After all, Plaintiffs had informed the IRS of their income through Form 1040-PR, as advised by their certified tax preparers and CPAs.

Due to the Plaintiffs' reliance on their CPAs and tax preparer's advice, the IRS-PR issued a Penalty Approval Form which reflected that only a failure to file penalty for tax year 2006 had been assessed[3]. In their audit, the IRS-PR ascertained that in preparation for the Bouts, Mr. Cotto (i) trained a significant amount of time in Puerto Rico, (ii) participated in promotional activities and press conferences held in Puerto Rico as a preamble of each of the fights and (iii) his name, image, and likeness was used in Puerto Rico for television advertisements, printed press, billboards, and other types of advertising.

Notwithstanding the foregoing, the IRS-PR audit determined that all the income generated from the Bout Agreements was to be considered United States source income and consequently the Plaintiffs were assessed and notified a tax deficiency in the aggregate **principal** amount of $5,330,386.00 which is divided as follows:

    a.  $383, 430.00 for tax year 2005;

    b.  $646,529.00 for tax year 2006;

    c.  $1,748,472.00 for tax year 2007; and

    d.  $2,542,955.00 for tax year 2008.

---

[3] In the Penalty Approval Form, Agent Cortés also noted that "[Plaintiff Cotto-Vázquez] showed no knowledge of tax law as his education is limited to high school. Puerto Rico source income is exempted of federal income taxes per IRC 933 and is very common that residents of Puerto Rico have no knowledge of their US tax obligations." PSMF ¶ 35; Docket No. 102-17 at pg. 1.

Plaintiffs requested the IRS for an Audit Reconsideration, but the IRS-PR upheld the assessment ("Audit Final Determination"). The Audit Final Determination referred to an income sourcing allocation method known as "event-based method". Said "event-based method" is found in an IRS Proposed Regulation from 2007 that never came into effect. See PROP-REG, TAX REGS, §1.861-4(G), 72 FR 58787.

Per the text of the Proposed Regulation, the sections regarding the "event basis method" shall "apply to taxable years beginning after the date final regulations are published in the Federal Register." 72 FR 58787-01(e). Such publication in the Federal Register did not occur and, as such, the Proposed Regulation did not become effective.

Based on the ineffective "event-based method", the IRS concluded that Mr. Cotto was compensated "purely for boxing an event", even though the Bout Agreements explicitly stated otherwise.

After engaging in the IRS' administrative appellate procedures, the IRS regional office in Las Vegas ("IRS-LV") sent Plaintiffs a Notice of Intent to Levy in the aggregate amount of $6,751,909.95. This Notice of Intent to Levy was sent while the appeals procedure was still in process.

On April 26th, 2012, the IRS-LV updated the Notice of Intent to Levy to extend Plaintiffs' payment deadline until April 30, 2012, and increased the amount of accrued interest proportionally for a new total amount owed of $6,753,726.27 distributed as follows:

    a.  $603,810.02 for tax year 2005;

    b.  $1,065,263.24 for tax year 2006;

    c.  $2,106,332.69 for tax year 2007; and

    d. $2,978,320.33 for tax year 2008.

The Updated Notice of Intent to Levy included the following additional late payment penalties and accrued interest:

    a. Late Payment Penalties: (i) $158,369.77 for tax year 2006; (ii) $427,790.19 for tax year 2007; and (iii) $626,626.80 for tax year 2008; and

    b. Accrued Interest: (i) $79,492.96 for tax year 2006; (ii) $157,183.90 for tax year 2007; and (iii) $216,792.17 for tax year 2008.

On April 27, 2012, Plaintiffs paid the IRS $6,598,217.18, after having deducted $155,509.09 from the required amount on the Notice of Levy of $6,753,726.27, in view of the downward adjustment made by the IRS-Appeals Office for tax year 2005. The payment included the penalties and accrued interest, itemized as follows:

    a. Late Filing Penalty: (i) $168,965.64 for tax year 2006; and (ii) $994.75 for tax year 2007;

    b. Failure to Pay Estimated Taxes Penalty: (i) $642.37 for tax year 2006; (ii) $686.43 for tax year 2007; and (iii) $624.79 for tax year 2008;

    c. Late Payment Penalty: (i) $159,379.21 for tax year 2006; (ii) $427,921.53 for tax year 2007; and (iii) $626,821.23 for tax year 2008; and

    d. Interest Accrued for Late Payment: (i) $223,100.37 for tax year 2006; (ii) $310,739.31 for tax year 2007; and (iii) $294,141.31 for tax year 2008.

On January 21st, 2014, Plaintiffs filed before the IRS an Amended US Individual Income Tax Return Form 1040X for each of the Tax Years. On that same day, they also filed Forms 843 before the IRS-PR to complete their Claim for Refund and Request for Abatement ("Claim for Refund").

The IRS-Appeals Office rejected the Claim for Refund on October 23rd, 2014, on the grounds that the income earned from the Bout Agreements was in its entirety United States source income and that no cause existed for the penalties to be abated.

**Defendant's Factual Contention:**

A.      **Introduction**

This is a federal income tax refund case involving an allegation that $15 million earned by a boxer for fighting in fights held in New York, New Jersey, and Nevada is not subject to federal income tax on the alleged grounds that it was earned in Puerto Rico by a resident of Puerto Rico.  Plaintiffs seek a refund of the taxes they paid for the years 2005 through 2008 and penalties they paid for the years 2006 through 2008.

Plaintiffs are residents of Puerto Rico.  Because they are residents of Puerto Rico, income they earn from sources in the United States – other than Puerto Rico – is taxable under the Internal Revenue Code, while income they earn within Puerto Rico is exempt from taxation under the Internal Revenue Code.

The money Cotto earned for fighting in these eight fights was earned pursuant to a series of contracts, known as "bout agreements."  Cotto entered into eight contracts with a "promoter," or a company that puts on fights; these contracts state how much money Cotto would be paid if he fought in the bout described in the contract.  The literal terms of the contracts state that Cotto was paid to fight, both parties to the contracts – Cotto and his promoter – understood Cotto was paid to fight, and the custom and practices of the industry are that a boxer is paid to fight.  Still, Plaintiffs claim that the $15 million Cotto was paid to fight in bouts that occurred in Nevada, New York, and New Jersey was somehow earned within Puerto Rico, and thus is exempt from

taxation.  Plaintiffs also claim that their failure to timely pay taxes, even though they never spoke to the accountant they hired to do their taxes, constitutes "reasonable cause" that excuses them from liability for penalties for timely payment of their income tax liabilities.

**B.      Amounts at Issue in the Complaint**

In the Amended Complaint, Plaintiffs seek a refund of $3,275,321.56 for amounts paid for the tax years 2005 through 2008.  This total amount encompasses the following: a refund of the penalties paid ($1,217,070.31); a refund of the income taxes paid related to the sourcing of income issue ($973,376); and a refund of the income taxes paid associated with plaintiffs' claim that there was a sale of intangible rights ($1,084,875).

**C.      Factual Issues**

*1.      The 2005 through 2008 Bouts*

For each of the years at issue, Miguel Cotto entered into two bout agreements with his promoter, Top Rank.  These 8 bouts were all to take place outside of Puerto Rico and in either New York, New Jersey, or Nevada.  Miguel Cotto was compensated by Top Rank only to fight as reflected by the purse of each bout agreement.  Each bout agreement also provided that if the fight was cancelled Top Rank was not required to pay Miguel Cotto.  Under each bout agreement, Cotto was obligated to take other steps that would ensure a successful boxing match, such as participating in publicity and marketing efforts, or allowing the promoter to use Cotto's likeness in such efforts, but each bout agreement awarded compensation to Cotto solely for participating in a bout held in either New York, New Jersey, or Nevada.

In 2005 through 2008, the amounts earned by Miguel Cotto, as reflected in the bout agreements, were solely for compensation to fight.

2.      *The Income Tax Assessments*

For each of the years 2005 through 2008, Plaintiffs filed a Form 1040PR, the income tax form filed by residents of Puerto Rico whose only sources of income are exempt from federal income taxation, and not a Form 1040, the income tax form on which income earned outside of Puerto Rico is reported.  Thus, despite Cotto's earning of $15 million from bouts held in New York, New Jersey, and Nevada, Plaintiffs did not initially report any of the income earned from the bouts on any income tax return.

This omission did not go unnoticed by the IRS.  Following an examination, the IRS determined that the income earned from Cotto's 2005 through 2008 bouts fought in New Jersey, New York, and Nevada should have been included on Form 1040 tax returns.

At the examination's conclusion, the IRS prepared Forms 4549 – Income Tax Examination Changes, which were executed by Plaintiffs.  The amounts included in the Forms 4549 reflected the Plaintiffs' tax deficiencies on the amounts Cotto earned for the bouts fought outside of Puerto Rico.

In February of 2010, Plaintiffs were assessed income taxes for the years 2005 through 2008.  The total amount of the taxes assessed against Plaintiffs was $5,321,386.  The assessments for each of the years was as follows: $383,430 for 2005; $646,529 for 2006; $1,748,472 for 2007; and was $2,542,955 for 2008.

3.      *The Failure to Pay Penalties*

The failure to pay penalties relate to the failure to pay the U.S. federal income taxes due in connection with the approximately $15 million in compensation received for the eight bouts in Nevada, New York, and New Jersey.

An accountant prepared the Plaintiffs' tax returns—the Forms 1040PR referenced above—but as with the late-filing penalties, the Plaintiffs did not receive any advice from their accountants which would excuse their failure to pay their taxes.  In addition, the Plaintiffs did not give their accountants all the necessary information to prepare the tax returns.  Plaintiffs only gave their accountants their Forms 1099s.

### III. LEGAL CONTENTIONS

**<u>Plaintiff's Legal Contention:</u>**

#### A.  *Late Payment Penalties to be Refunded due to Defective Notice and Lack of Authority under IRS § 6651(a)(2)*

The IRS assessed late payment penalties against Plaintiffs for each of the Tax Years purportedly pursuant to the provisions of United States Internal Revenue Code ("IRC") § 6651(a)(2).  Under IRC § 6651(a)(2), the IRS has the authority to impose penalties "***<u>only</u>** to unpaid tax shown on the return and this **does not reach taxpayers who failed to pay assessed deficiencies or who fail to file any return**".  See, Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts, ¶ 117.2, at *3 (Westlaw 2020).

It is under the IRC § 6651(a)(3) that the IRS is authorized to impose penalties "*for failure to pay tax that is required to be shown on a return, but is not*."  *Id.*

Therefore, if a taxpayer failed to file a return, but the IRS subsequently assessed a deficiency by means of an audit or examination, the IRC calls for the imposition of late payment penalties pursuant to the provisions of IRC § 6651(a)(3). See, 14A Mertens Law of Federal Income taxation §55:10 (Westlaw 2020).

In the instant case, the IRS assessed and notified to Plaintiffs late payment penalties for the Tax Years under IRC § 6651(a)(2).  Specifically, most of the penalties imposed by the IRS against

Plaintiffs were assessed as part of an audit or examination on February 8th, 2010. Then, on April 26th, 2012, the IRS notified to Plaintiffs a Notice of Intent to Levy which included the imposition of additional late payment penalties with the following explanation: "***Paying Late – Internal Revenue Code Section 6651(a)(2)** – We charge a penalty when your tax is not paid on time. Initially, the penalty is ½ of 1% of the unpaid tax for each month or part of a month the tax was not paid.*" <u>See</u>, Dkt. No. 102-20.

However, under IRC § 6651(a)(2), the IRS had no authority to impose late payment penalties against Plaintiffs in connection with the audit assessment.  Instead, such authority is only delegated to the IRS under IRC § 6651(a)(3), a provision not used in this case as the legal basis to assess the late payment penalties against the Plaintiffs.  To the extent that the IRS notified Plaintiffs of late payment penalties under IRC § 6651(a)(2), such notification was defective and invalid.

Consequently, all late payment penalties imposed against Plaintiffs on or after the completion of the IRS examination (i.e. February 8th, 2010) should be refunded with the applicable accrued interests for lack of authority under IRC § 6651(a)(2).  Thus, the principal amounts of the late payment penalties to be reimbursed to Plaintiffs for lack of authority under IRC § 6651(a)(2) are as follows:

| Tax Year – 2006 | |
|---|---|
| *Assessment Date* | *Amount* |
| Feb 8, 2010 | $             330.74 |
| May 21, 2012 | $        158,369.77 |
| Total | **$    158,700.51** |

| Tax Year – 2007 | |
|---|---|
| **Assessment Date** | **Amount** |
| Feb 8, 2010 | $            140.21 |
| May 21, 2012 | $     427,781.32 |
| Total | **$     427,921.53** |

| Tax Year – 2008 | |
|---|---|
| **Assessment Date** | **Amount** |
| Feb 8, 2010 | $            150.00 |
| May 21, 2012 | $     626,626.81 |
| Total | **$     626,776.81** |

Total Refund 2006-2008   **$     1,213,398.85**[4]

Considering the principal amount of late payment penalty improperly assessed and defectively notified under IRC § 6651(a)(2) of **$1,213,398.85**, plus **$538,738.35** in accrued interest, Plaintiffs' total refund amounts to **$1,752,137.20**.[5]

## B. REFUND FOR OVERPAID PENALTIES DUE TO REASONABLE CAUSE

In the alternative, for the reasons explained below, Plaintiffs overpaid and should be refunded certain penalties due to "reasonable cause".

Plaintiffs signed and filed Forms 1040-PR for the Tax Years as prepared by CPA Sanabria and CPA Ortiz and did not file Forms 1040-US relying on their CPAs advice, knowledge and professional judgment. Even though both CPAs received the **1099 Form** issued by Top Rank along with the other information provided to them regarding **travelling expenses** to be deducted

---

[4] The amount of penalties claimed for refund in the Amended Complaint has been amended pursuant to the evidence discovered, including the Certified Account Transcripts stipulated by the parties (See Defendant's Identification Documents A-D below).

[5] Interest computed from the payment date to March 28, 2022 pursuant to IRC 6621 & Rev Rul. 018-07.

in Plaintiffs tax returns, based on their erroneous interpretation of Section 933 of the United States

Internal Revenue Code ("IRC")[6], the CPAs concluded they only needed to prepare a **Form 1040-**

**PR** for each of the Tax Years (**instead of the required Form 1040-US**), signed them as authorized

preparers,[7] and finally handed them to Mr. Cotto Sr. for the Plaintiffs signing.

> Q    Did any of the Cottos instruct you as to which types of tax returns
> you has to file?
> A    No, sir.
> Q    The tax returns were then prepared based on your best knowledge at
> the time?
> A    That's correct, sir.
> Q    And that knowledge, you have very candidly admitted, was
> defective at the time, correct, sir?
> A.    That's correct.
> Q    But you did not intentionally provide erroneous advice, correct?
> A    No.
> Q    **But you provide advice?**
> A.    **Yes, I did.**  (Emphasis added).

> See, CPA Ramón Sanabria deposition taken on May 24, 2018, p. 201, lines
> 15-25, and p. 202, lines 1-20, Dkt. No. 102-15, Exhibit O, p.10-11.

> Q    Miguel did not file a 1040 U.S.?
> A    Uh-huh.
> Q    **As advised by you?**
> A.    **Correct.  That's correct.**  (Emphasis added).

> *See*, CPA Ramón Sanabria deposition taken on May 24, 2018, p. 167, lines
> 13-16, Dkt. No. 102-15, Exhibit O, p. 7.

> Q    Listen, if with what you know right now you had a **1099 form** right
> in front of you, right?  **That would have triggered immediately in**

---

[6] See 26 U.S. Code §933.

[7] ***Statement on Standards for Tax Services N. 1, Tax Returns Positions***, issued by the Tax Executive Committee of the American Institute of Certified Public Accountants ("AICPA") states: "A member should determine and comply with the standards, if any, that are imposed by the applicable taxing authority with respect to recommending a tax return position, or preparing or signing a tax return." ¶ 4.  For purposes of these standards a "tax return position" is (i) a position reflected on a tax return on which a member has specifically advised a taxpayer or (ii) a position about which a member has knowledge of all material facts and, on the basis of those facts, has concluded whether the position is appropriate. ¶ 1(a).

|     | **your present knowledge the knowledge that you have to file a 1040 U.S. tax return, right**? |
| --- | --- |
| A.  | **That's correct**. |
| Q   | And as a matter of fact, the 2007 income tax return of Mr. Cotto incorporated a 1099 form from Top Rank? |
| A.  | That's correct. |
| Q   | And, obviously, **at the time that didn't trigger in your mind the obligation of Mr. Cotto to file the 1040 U.S.**? |
| A   | **That' correct**. |
| Q   | **And that's evidence of your defective knowledge at the time**? |
| A.  | **That's correct**.  (Emphasis added). |

*See*, CPA Ramón Sanabria deposition taken on May 24, 2018, p. 202, lines 21-25, and p. 203, lines 1-12, Dkt. No. 102-15, Exhibit O, p.11.

Section 6651 of the IRC provides the legal authority for the IRS to impose upon taxpayers penalties based on their failure to file a tax return(s) or to failure to pay taxes. However, the IRC provides an exception for cases where it is shown that the failure to file and/or pay tax returns is due to reasonable cause and not willful neglect. 26 U.S. Code §§ 6651(a)(1), 6651(a)(2) and 6651(a)(3).

The Supreme Court has interpreted "that '*reasonable cause*' is established when a taxpayer shows that he *reasonably relied* on the advice of an accountant or attorney **that it was unnecessary to file a return, even when such advice turned out to have been mistaken**.". (Emphasis added).  *See*, *U.S. v. Boyle*, 469 U.S. 241, 244-250 (1985).[8]

Plaintiffs shall demonstrate, as illustrated by the excerpts of CPA Sanabria's deposition above, that they relied on the advice of the CPAs hired to prepare their federal tax returns. Furthermore, CPA Sanabria admitted during his deposition that categorizing all income received

---

[8] When an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. ***Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion" or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place***. See *Id.* at 251, 105 S.Ct. 687. (Emphasis added).

by Mr. Cotto as Puerto Rico sourced "*was a huge mistake [on his part]*." <u>See</u>, CPA Ramón Sanabria deposition taken on May 24, 2018, p. 200, lines 11-14, Dkt. No. 102-15.

The principal amounts of the overpaid late payment penalties for tax years 2006, 2007 and 2008 to be reimbursed to Plaintiffs are the following:

| Tax Year | Assessment Date | Amount |
|---|---|---|
| 2006 | May 12, 2008 | $679 |
| | Feb 8, 2010 | $331 |
| | May 21, 2012 | $158,370 |
| 2007 | Feb 8, 2010 | $140 |
| | May 21, 2012 | $427,781 |
| 2008 | Jun 29, 2009 | $44 |
| | Feb 8, 2010 | $150 |
| | May 21, 2012 | $626,627 |
| Total Penalties to be Refunded | | $1,214,122[9] |

The failure to pay penalties levied against Plaintiffs and paid by them, for tax years 2006, 2007 and 2008 total **$1,214,121.97** in principal amount, plus **$539,059.40** in accrued interest for a total refund amount of **$1,753,181.37[10]**.

## C. *CHARACTERIZATION OF COMPENSATION*

Defendants have argued that Mr. Cotto was compensated ***exclusively*** for showing up to fight at each boxing event. Such a limited compensation scope is clearly meant to fit the Defendants' theory related to the event-based method for the income sourcing allocation.

---

[9] The amount of penalties claimed for refund in the Amended Complaint has been amended pursuant to the evidence discovered, including the Certified Account Transcripts stipulated by the parties (See Defendant's Identification Documents A-D below).
[10] Interest computed from the payment date to March 28, 2022 pursuant to IRC 6621 & Rev Rul. 018-07.

Defendants' theory, however, does not reflect a reasonable analysis of the facts and circumstances applicable to this case, as required by the IRC and its Regulations.[11] Furthermore, the event-based methodology is nothing more than a Proposed Regulation[12] that has not been enacted.

On the other hand, an integral reading of the Bout Agreements reveals that most of the Bout Agreements included specific amounts earmarked for training expenses and promotional services, and the assignment of rights under the "Compensation" section of each Agreement, which were in addition to the compensation under the "Purse" section of each Agreement.

Plaintiffs shall demonstrate that the personal services associated with Mr. Cotto showing up to fight at each boxing event do not represent the entirety of the services and/or actions for which Mr. Cotto was compensated. Under a facts and circumstances analysis of the services and/or actions for which Mr. Cotto was engaged, it will be evident that a significant portion of the income generated by the Plaintiffs under the Bout Agreements was not US-sourced income inasmuch the corresponding services and/or action object of the same were provided from Puerto Rico.

**(i)      Training Activities Compensation**

According to Mr. Cotto's deposition testimony, prior to each boxing event, Mr. Cotto engaged in training activities for seven (7) weeks in Puerto Rico and just one (1) week in the United States, in the state where the fight was to take place. The only exceptions to said training

---

[11] See 26 C.F.R. § 1.861-4(b)(2).

[12] A proposed federal regulation that has not been legally adopted has no legal effect and is not entitled to deference because it does not represent an agency's considered interpretation of its statute.  See, *Clay v. Johnson*, 264 F.3d 744 (7th Cir. 2001); Sweet *v. Sheahan*, 235 F.3d 80 (2d Cir. 2000).  See also, *Le Croy Research Systems Corp. v. C.I.R.*, 751 F.2d 123, 127 (C.A.2, 1984).

schedule were the training camps for the Malignaggi and Quintana bouts, both of which were held in their entirety in Boca Raton, Florida.

Taking into account that Mr. Cotto trained in Puerto Rico for seven (7) weeks and just one (1) week in the United States, an **87.5%** (7/8 weeks) of the training compensation paid to Mr. Cotto under the Bout Agreements should be considered as Puerto Rico sourced income ("PR-source income") excluded under IRC Section 933. Thus, the refund owed to Plaintiffs for taxes paid due to the improper sourcing of income related to training adds up to **$658,437.50** in principal amount, plus **$292,340.46** in accrued interest for a total amount of **$950,777.96**.[13]

### Sourcing of Training Compensation (Tax Rate 35%)

| Bout | Training Compensation | Training Days | | Allocation % | | Source of Income | | Refund Principal Amount |
|------|------|------|------|------|------|------|------|------|
| | | PR | US | PR | US | PR (excluded by IRC 933) | US | |
| Cotto v. Abdullaev (2005) | $50,000 | 49 | 7 | 87.5% | 12.5% | $43,750 | $6,250 | $15,313 |
| Cotto v. Torres (2005) | $50,000 | 49 | 7 | 87.5% | 12.5% | $43,750 | $6,250 | $15,313 |
| Cotto v. Malignaggi (2006) | $100,000 | 0 | 56 | 0.0% | 100.0% | $0 | $100,000 | $0 |
| Cotto v. Quintana (2006) | $0 | | | | | $0 | $0 | $0 |
| Cotto v. Judah (2007) | $300,000 | 49 | 7 | 87.5% | 12.5% | $262,500 | $37,500 | $91,875 |
| Cotto v. Mosley (2007) | $450,000 | 49 | 7 | 87.5% | 12.5% | $393,750 | $56,250 | $137,813 |
| Cotto v. Gomez (2008) | $300,000 | 49 | 7 | 87.5% | 12.5% | $262,500 | $37,500 | $91,875 |
| Cotto v. Margarito (2008) | $1,000,000 | 49 | 7 | 87.5% | 12.5% | $875,000 | $125,000 | $306,250 |
| Total | $2,250,000 | | | | | $1,881,250 | $368,750 | **$658,438**[14] |

---

[13] Interest computed from April 27, 2012 to March 28, 2022 pursuant to IRC 6621 & Rev Rul. 018-07.
[14] The amount of penalties claimed for refund in the Amended Complaint has been amended pursuant to the evidence in the judicial record, and to be offered at trial, as to Mr. Cotto's training schedule.

(ii)    **Promotional Activities Compensation**

With respect to promotional activities, the Bout Agreement for the Margarito bout included a special television promotional service fee of $1,000,000 under the "Compensation" provision. For the Margarito Bout promotion, Plaintiffs will demonstrate at trial that Mr. Cotto engaged in promotional activities for nine (9) days in Puerto Rico, five (5) days in the United States and two (2) days in Mexico.

Consequently, **56.3%** (9/16 days) of the promotional compensation should be considered as PR-source income excluded under IRC Section 933.  Thus, the refund owed to Plaintiffs for taxes paid due to the improper sourcing of income related to promotional activities adds up to **$196,875** in principal amount, plus **$87,410.78** in accrued interest for a total amount of **$284,285.78**.[15]

### Sourcing of Promotional Compensation (Tax Rate 35%)

| Bout | Promotional Services Compensation | Promotion Working Days | | Allocation % | | Source of Income | | Refund Principal Amount |
|---|---|---|---|---|---|---|---|---|
| | | PR | US | PR | US | PR (excluded by IRC 933) | US | |
| Cotto v. Margarito (2008) | $1,000,000 | 9 | 7 | 56.3% | 43.8% | $562,500 | $437,500 | **$196,875**[16] |

[15] Interest computed from the payment date to March 28, 2022 pursuant to IRC 6621 & Rev Rul. 018-07.
[16] The amount claimed for refund related to the sourcing of the promotional compensation in the Amended Complaint has been amended pursuant to the evidence in the judicial record, and to be offered at trial, as to Mr. Cotto's promotional schedule.

(iii)     **Pay-Per-View Compensation**

Regarding pay-per-view ("PPV") payment, the "Compensation" provision of the Bout Agreement for the Margarito bout included a payment for each PPV purchased for the Bout in the United States, its territories and possessions, and the Commonwealth of Puerto Rico. The bout generated a total PPV income of $9,398,161 of which $1,400,000 were generated from sources within Puerto Rico.  This type of contingent PPV payment is considered as royalty income under the IRC, derived from the use of intangible property rights sourced by the location of its use.[17] Consequently, **14.9%** ($1.4 million out of $9,398,161) of the PPV compensation effectively received by the Plaintiffs should be considered as PR-source income excluded under IRC § 933. Thus, the refund owed to Plaintiffs for taxes paid due to the improper sourcing of income related to PPV payment adds up to **$39,772.22**[18] in principal amount, plus **$17,658.53** in accrued interest for a total amount of **$57,430.75**[19].

Furthermore, pursuant to IRC § 933, the gain on the sale of personal property made by a bona fide PR resident is considered as PR source income under the IRC excluded from and NOT subject to federal income taxation.

IRS Revenue Ruling 54-40915[20] provides that if the owner of an intangible assigns and transfers to another the exclusive right to exploit the copyrighted work in a particular medium throughout the life of the intangible, then the consideration received for the use of the intangible is treated as the sale of personal property.

---

[17] See IRC §§ 861(a)(4), 862(a)(4) and 865(d)(2).  26 U.S.C.A. §§ 861(a)(4), 862(a)(4) and 865(d)(2).

[18] The amount claimed for refund related to the sourcing of the PPV royalty compensation in the Amended Complaint has been amended pursuant to the evidence in the judicial record, and to be offered at trial, as to Mr. Cotto's royalty licenses earned.

[19] 19 Interest computed from the payment date to March 28, 2022 pursuant to IRC 6621 & Rev Rul. 018-07.

[20] See, 1954-2 C.B. 174

Pursuant to the Bout Agreements, Mr. Cotto was compensated for the sale of his intangible personal property rights to Top Rank for all exclusive worldwide rights to [each] Bout in perpetuity. Furthermore, during Robert Arum's deposition, Top Rank's Chairman and an expert in the boxing industry who produced the bouts Mr. Cotto participated in during the Tax Years, he estimated that the Live Gate (ticket sales for each boxing event) constituted one-third of the revenues for a bout, whereas the exploitation of the ancillary rights, which are related to the sale of Mr. Cotto's intangible property, represent the remaining two-thirds of the revenues perceived.

Following Mr. Arum's testimony as to the revenue generated from the exploitation of the intangible property (two-thirds of all bout-related revenues), the refund owed to Plaintiffs for taxes paid due to the improper characterization and sourcing of income related to the sale of intangible property rights (e.g. name, image and likeness) adds up to **$3,013,325** in principle, plus **$1,337,889.64** in interest for a total amount of **$4,351,214.64**[21].

**Sourcing of Purse Compensation (Tax Rate 35%)**

| Bout | Purse | Allocation % | | Source of Income | | Refund Principal Amount |
| | | Rights | Fight | PR (excluded by IRC 933) | US | |
|---|---|---|---|---|---|---|
| Cotto v. Abdullaev (2005) | $500,000 | 67% | 33% | $335,000 | $165,000 | $117,250 |
| Cotto v. Torres (2005) | $400,000 | 67% | 33% | $268,000 | $132,000 | $93,800 |
| Cotto v. Malignaggi (2006) | $700,000 | 67% | 33% | $469,000 | $231,000 | $164,150 |
| Cotto v. Quintana (2006) | $1,100,000 | 67% | 33% | $737,000 | $363,000 | $257,950 |
| Cotto v. Judah (2007) | $2,200,000 | 67% | 33% | $1,474,000 | $726,000 | $515,900 |
| Cotto v. Mosley (2007) | $2,750,000 | 67% | 33% | $1,842,500 | $907,500 | $644,875 |
| Cotto v. Gomez (2008) | $2,200,000 | 67% | 33% | $1,474,000 | $726,000 | $515,900 |
| Cotto v. Margarito (2008) | $3,000,000 | 67% | 33% | $2,010,000 | $990,000 | $703,500 |
| Total Refund | $12,850,000 | | | $8,609,500 | $4,240,500 | **$3,013,325**[22] |

[21] Interest computed from the payment date to March 28, 2022 pursuant to IRC 6621 & Rev Rul. 018-07.

[22] The amount claimed for refund related to the sourcing of the purse compensation in the Amended Complaint has been amended pursuant to the evidence in the judicial record, and to be offered at trial, as to Mr. Cotto's sale of certain property rights.

Under Puerto Rico law, a valid contract is the law between the contracting parties, who shall comply, not only with its terms and conditions, but also with all its natural consequences pursuant to good faith, custom and law. 31 LPRA §3375. When "the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed". 31 LPRA §3471.

In the exercise of interpreting a contract, one must assume fairness, correction and good faith in its wording and construe it in such a manner that leads to results consonant with the contractual relationship as required by ethical standards. In other words, one cannot seek to obfuscate or distort the interpretation of contracts to reach absurd or unfair results. *S.L.G. Irizarry v. S.L.G. Garcia,* 155 D.P.R. 713 (2001).

Nevada law includes similar provisions regarding the interpretation of contracts. Under Nevada law, unambiguous contracts, as a general rule, are construed according to their plain language. *Sheehan & Sheehan v. Nelson Malley and Co.,* 121 Nev. 481, 117 P.3d 219, 223-24 (2005). The intent of the parties is best determined by the plain language of the contract. *United States v Donovan,* 348 F.3d 509, 512 (6thCir. 2003). The court must read the contract as a whole and avoid negating any contract provision. *Road & Highway Builders v. N. Nev. Rebar,* 284 P.3d 377, 380 (2012).

Where two interpretations of contract are possible, the court will prefer interpretation which gives meaning to both provisions rather than an interpretation which renders one of the provisions meaningless. When important terms remain unsolved, a binding agreement cannot exist. *Tropicana Hotel Corp. v. Speer, 101 Nev. 40, 692 P.2d 499 (1985).*

Simply put, the IRS requests this Court to disregard the clear language of the Bout Agreements, which explicitly provides that Mr. Cotto was compensated for, among other things, the grant or assignment of his name, image and likeness for the exclusive use by Top Rank with respect to each bout **in perpetuity.** Upon completion of each bout, a valuable intangible right to be developed in the form of, for example, digital recordings, video games, toys, fight footage, souvenirs, and other related goods, was created in favor of Top Rank. Said intangible right, consisting primarily of the name, image and likeness of Mr. Cotto, to date is still presumably being exploited by Top Rank.

To conclude that Mr. Cotto was not compensated for the assignment of those rights to Top Rank is the equivalent of disregarding the plain language of the Bout Agreements. In *Goosen v. Commissioner,* 136 T.C. 547, 563 (2011), the Tax Court found that the performance of services and the use of the name and likeness of the athlete were equally important (50% personal service income and 50% income from royalty).

This is not the first time the IRS has studied the characterization and source of income received by international athletes. In 1993, the IRS issued a Field Service Advisory where the issue at hand was whether the income received by an individual in connection with an endorsement contract was compensation for services, royalty, or some combination of the two. In its analysis, the IRS concluded that the income attributable to the use of the name and likeness of the athlete be characterized as royalty payments, while the income attributable to filming videos and commercials should be treated as personal services income. Field Serv. Advisory, 1993 WL 1468176 (May 10, 1993).

23

In its Field Service Advisory, *Id*, the IRS developed a three-step process to characterize and source the income for US tax purposes. The first step is the characterization of the payments; the second step is the apportionment of the payment; and the third step is the sourcing of the payment.

In the characterization of the payment, the IRS concluded that some of the taxpayer's income for promotional activities were to be characterized as personal services, because they required him to make special efforts on behalf of the other contracting party. For instance, the taxpayer had to film videos and make special promotional appearances. However, payment for other activities that were merely ancillary to the contract could not be categorized as personal services, but rather as a royalty payment. Field Service Advisory, *Id*., at 3-4. "Where a person is engaged in an activity and uses that activity as showcase for a product, the latter phenomenon is a purely passive part of the performance." *Id*., at 4.

For the second step, apportionment of the payment, the IRS argued that it is purely a factual question. "We recommend that you inquire as to [the taxpayer's] daily rate for personal appearances during the *** taxable year and multiply that rate by [the days on which services were provided] to determine the personal services amount. The royalty amount would merely be [the contract price] less the personal services amount." *Id*.

Finally, the IRS advised that it should be ascertained where the intangible property (name and likeness of the athlete) was used or located. *Id*. The IRS stated that

> Thus, in allocating [the taxpayer's] royalty income, one should first look to where the income was generated, that is, where the products he endorsed were ultimately sold. To the extent that the wearing of the *** logo (during *** while on internationally broadcast network television) and the *** produced sales in the U.S., some income should therefore be allocated to U.S. sources. In addition, his name and likeness may have been used to market *** products in

24

the United States by means other than the commercials. Obviously, it is difficult to calculate the value of a right to use a name; however, the amount should be based on the relative value in the United States compared to the rest of the world. Assuming that *** has used [the taxpayer's] name everywhere allowed (world-wide except for ***), the best measure of value may be the amount of United States sales divided by the amount of non-*** world-wide sales.

*Id.* at 5.

In light of the above, the IRS erred in its interpretation of the compensation clauses of the Bout Agreements and consequently the tax deficiency assessed against Plaintiffs is wrong and excessively overestimated to the extent it does not exclude PR-source income attributable to the grant of intangible rights to Top Rank and to services provided in Puerto Rico (e.g. training, press conferences, public appearances, and promotional activities, among others).

**Defendant's Legal Contention:**

**A.      Are Plaintiffs entitled to a refund for their 2005 through 2008 income taxes because Miguel Cotto was compensated for more than just fighting?**

Income from sources in the United States, other than Puerto Rico, is not exempt from federal income tax. 26 U.S.C.  §§ 861, 933.  *See Manning v. Comm'r*, 614 F.2d 815, 816 (1st Cir. 1980) (affirming decision that taxpayer's income source was from sources outside of Puerto Rico).  Section 861(a)(3) of the Internal Revenue Code (Title 26, United States Code) governs the determination of the sourcing of income paid for personal services (i.e., boxing).  26 U.S.C. § 861(a)(3).   Generally, the source of personal service income is determined by where the services were performed. *See United States v. Bell*, 414 F.3d 474, 475 n. 1 (3d Cir. 2005); `, 1996 WL 352998, at *43 (Tax Ct. June 27, 1996).

Tax assessments – including those made against Plaintiffs – are presumptively correct. Once the United States introduces proof of an assessment, the burden shifts to the taxpayer to

25

disprove his liability for the assessed taxes.  Here, Plaintiffs cannot meet their burden of establishing that any of the $15 million Cotto earned for the bouts fought in Nevada, New York, and New Jersey is derived from sources within Puerto Rico.  Cotto and Top Rank entered into agreements that compensated Cotto to fight.  In the complaint, Cotto contends that even though the agreements he signed do not allocate the compensation to other activities or personal rights, this Court should decide a decade later to allocate the compensation to activities or personal rights in Puerto Rico.  Cotto, however, cannot demonstrate by "strong proof" that the agreement should be interpreted to provide for such an allocation.  *Muskat v. United States*, 554 F.3d at 189, 191.

The *Muskat* case is both instructive and dispositive to Plaintiffs' refund suit.  In *Muskat*, the taxpayer entered into a contract with a third party and sought, for tax purposes, to vary the written allocation specifically provided in the contract.  *Muskat*, 554 F.3d at 187-88. Specifically, the taxpayer sought to recharacterize the allocation of one of the payment terms of the contract from a payment for a covenant not to compete to a sale of goodwill.  *Id*. at 188.  The Court recognized that there was a tax advantage to recharacterizing the allocation but rejected the taxpayers' contention.  *Id*.  The First Circuit stated "the party seeking to alter a written allocation must demonstrate an actual meeting of the minds with respect to some other allocation.  The heightened standard strikes the appropriate balance between predictability in taxation and the desirability of respecting the contracting parties' real intentions."  *Id*. at 189.  The Court added that to alter the written allocation the taxpayer must present strong evidence, that is, "the taxpayer's evidence must have persuasive power closely resembling 'clear and convincing' evidence required to reform a written contract."  *Id*. at 191.

Plaintiffs cannot meet the First Circuit's standard of "strong proof" that Cotto and Top Rank (Cotto's promoter) intended for there to be a different allocation than what is reflected in the bout agreements.  First, the bout agreements are clear that Cotto was paid only to fight.  If there was no fight, Cotto was not paid.  Second, the parties to the bout contracts agree that Cotto was paid to fight.  Third, James Thomas – the United States' boxing expert – submits that boxers like Cotto are paid to fight.

Because Cotto was paid to fight, his compensation is sourced where he performed the services (i.e. where the bouts occurred).  All fights occurred within the United States, and outside of Puerto Rico, and accordingly, Plaintiffs were liable for their 2005 through 2008 income taxes.

**B.     Did the Plaintiffs have Reasonable Cause for their Failure to pay their 2006, 2007, and 2008 taxes?**

Plaintiffs were assessed failure to pay penalties, under § 6651(a)(2) , because they failed to timely pay their income taxes for the years 2006 through 2008.  Under § 6651(a)(2), a taxpayer who fails to pay any tax due "on or before the date prescribed for payment of such tax," with extensions, is liable for an "addition to the tax" equal to one-half percent of the amount of the tax due for each month during which such failure continues, not exceeding 25 percent of the tax due in the aggregate.  An exception exists if the taxpayer shows that the failure to pay "is due to reasonable cause and not due to willful neglect." § 6651(a)(2).

Under Treasury regulations, in order to demonstrate "reasonable cause" for failure to timely pay, the taxpayer must make "a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship . . . if he paid on the due date." Treas. Reg. § 301.6651-l(c)(l).  The taxpayer "bears the heavy burden of proving" both reasonable

cause and lack of willful neglect.  *Kennedy v. United States*, 542 F. Supp. 1046, 1049 (D.N.H. 1982).

Although the taxpayer may establish reasonable cause by showing that it reasonably relied on the advice of an accountant or tax preparer, "ordinary business care and prudence on the part of the taxpayer are still required," and any such claimed reliance on the advice of others "must be reasonable." *Boles Trucking, Inc. v. United States*, 77 F.3d 236, 242 (8th Cir. 1996).

Plaintiffs cannot meet their heavy burden to establish reasonable cause to excuse them from the failure to pay penalties.  Plaintiffs allege in their complaint that they received advice from accountants that they did not have to pay federal income taxes on the $15 million earned for the eight bouts.  However, at his deposition, Cotto admits that he never received advice from the accountants (Ramon Sanabria and Luis Orlando Ortiz ).  Cotto and his accountant testified that they never spoke about Cotto's taxes.  Any communication about Cotto's taxes were between Cotto's now-deceased father and the accountant.  The accountant testified that he never gave Cotto's father an opinion on whether the U.S. based fights should be considered Puerto Rican source income.

Further, and as addressed above, Cotto failed to provide his accountant all the necessary information.  "A taxpayer's reliance on the advice of a professional will be objectively reasonable only if the taxpayer has provided necessary and accurate information to the professional." *Gigliobianco v. Comm'r*, 2012 WL 4464873 * 32 (Tax Ct. Sept. 27, 2012).  *See also Fidelity Int'l Currency Advisor A Fund, LLC v. United States*, 747 F. Supp.2d 49, 243 (D. Mass. 2010) (advice is only reasonable if based on all the necessary information), aff'd 661 F.3d 667 (1st Cir. 2011).  Cotto or his father did not give the accountant all the requisite information.

The accountant was only provided the Form 1099s. The accountant was never provided copies of the bout agreements.

Because Plaintiffs cannot establish that they received advice from their accountants or that they provided all the necessary information to their accountants, and such advice was the reasonable cause they alleged, their failure to pay is not due to reasonable cause.

## IV. PROPOSED STIPULATIONS OF FACTS & DOCUMENTS

1. On February 8, 2010, a delegate of the Secretary of the Treasury of the United States timely assessed income taxes in the amount of $383,430 against Plaintiffs Miguel Cotto and Melissa Guzman for the year 2005.

2. On February 8, 2010, a delegate of the Secretary of the Treasury of the United States timely assessed income taxes in the amount of $646,529 against Plaintiffs Miguel Cotto and Melissa Guzman for the year 2006.

3. On February 8, 2010, a delegate of the Secretary of the Treasury of the United States timely assessed income taxes in the amount of $1,748,472 against Plaintiffs Miguel Cotto and Melissa Guzman for the year 2007.

4. On February 8, 2010, a delegate of the Secretary of the Treasury of the United States timely assessed income taxes in the amount of $2,542,955 against Plaintiffs Miguel Cotto and Melissa Guzman for the year 2008.

5. The income tax assessments for the years 2005 through 2008 resulted from an income tax examination conducted by the Internal Revenue Service.

6. The Internal Revenue Service determined that the income earned from Cotto's 2005 through 2008 bouts fought in New Jersey, New York, and Nevada should have been included in Plaintiffs' (US) Form 1040 tax returns.

7. At the conclusion of the examination, the Internal Revenue Service prepared Forms 4549 – In-come Tax Examination Changes, which were executed by Plaintiffs. The amounts included in the Forms 4549 reflected what the IRS concluded to be the tax deficiencies on the amounts Cotto earned for the bouts fought in New York, New Jersey, and Nevada between the years 2005 and 2008.

8. The IRS assessed Plaintiffs a penalty for paying late pursuant to Internal Revenue Code Section 6651(a)(2).

9. On April 27, 2012, Plaintiffs paid the penalties levied pursuant to Internal Revenue Code Section 6651(a)(2), as assessed and notified by the IRS.

**V.  WITNESSES**

**<u>Plaintiffs' Witnesses:</u>**

1. Miguel A. Cotto Vázquez – Plaintiff. Mr. Cotto will testify about his training schedule for each of the boxing events object of the Bout Agreements.

2. David López – former Senior Vice-President of Finance at Top Rank, Inc. Mr.  López will testify about the content of the certifications generated by him during his tenure as such, communications, and the various revenue streams generated by Top Rank related to the bouts Mr. Cotto participated in.

3. Robert Arum – Chairman of the Board of Top Rank, Inc. Mr. Arum will testify about Top Rank's acquisition of certain intellectual property rights from Mr. Cotto via the Bout Agreements.

4.      Bryan Pérez – Mr. Pérez will testify about the promotional schedule, press conferences, public activities, and other activities engaged by Mr. Cotto in the promotion of the Margarito bout.

5.      Javier Cortés – HOSTILE WITNESS – during the time relevant to the fact alleged on the Amended Complaint, Mr. Cortés was a Revenue Agent for the IRS in charge of the audit conducted to Mr. Cotto's tax returns. Mr. Cortes will testify about interviews held with relevant persons, the audit procedures and conclusions, deficiency assessment, and nonassertion of penalties, among other tax audit-related procedures conducted by him or under his supervision.

6.      Reservations:

   a.  Plaintiffs reserve their right to call rebuttal and/or impeachment witnesses.

   b.  Defendants reserve their right to amend their witnesses list.

   c.  Plaintiffs reserve their right to call any of the witnesses announced by the defendant.

   d.  The disclosure of a witness on Plaintiff's witness list does not constitute a representation that the witness will be produced or called at trial.

**<u>Defendant's Witnesses:</u>**

1.      <u>Miguel Cotto-Vazquez</u>- will testify about the tax liabilities assessed against him and his wife which are at issue in this case, the various contracts he entered into that are at issue in this case, and the conversations he had with Ramon Sanabria Ramos.

2.      <u>Ramon Sanabria Ramos</u>-will testify regarding the preparation of plaintiffs' tax returns and his conversations with the plaintiffs.

3.      <u>James J. Thomas, II</u> (identified as the Government's expert witness) - will testify about the customs and practice of the boxing industry, including but not limited to bout agreements and associated agreements.

4.      <u>Robert Arum-</u> will testify about the bout agreements and promotional agreements entered into between the plaintiff and Top Rank for the years 2005 through 2008.

5.      <u>Evangelista Cotto Carrasquillo–</u> will testify about his time as Miguel Cotto's manager/trainer.

6.      <u>Melissa Guzman Quinones</u>– will testify about the tax liabilities assessed against her and her husband which are at issue in this case.

7.      <u>Revenue Agent Javier Cortes of the Internal Revenue Service/or his Manager</u> - will testify about the tax liabilities and penalties at issue in this case and the records associated with the assessments.

8.      <u>Carmen Cifredo or another Technical Advisor of the Internal Revenue Service</u> – will testify about the IRS account transcripts at issue in this case.

Reservations:

a.      Defendant reserves its right to call rebuttal and/or impeachment witnesses.

b.      Defendant reserves its right to amend their witnesses list.

c.      Defendant reserves its right to call any of the witnesses announced by the plaintiffs.

d.      The disclosure of a witness on Defendant's witness list does not constitute a representation that the witness will be produced or called at trial.

## VI.   DOCUMENTARY EVIDENCE INTENDED TO BE OFFERED AS EVIDENCE

### Plaintiff Identification Documents:

| Plaintiff Id. No. | Authentication Stipulated | Document Description | U.S. Objections |
|---|---|---|---|
| 1 | Yes | Certification of David López dated August 10, 2019. See Dkt. No. 102-22. | Object pursuant to FRE 401, 403, 802 |
| 2 | Yes | Certification of David López dated April 10, 2019.  See Dkt. No. 102-22. | Object pursuant to FRE 401, 403, 802 |
| 3 | Yes | Email from David Marroso dated May 14, 2019 with information provided by Top Rank. See Dkt. No. 102-22. | Object pursuant to FRE 401, 403, 802 |
| 4 | Yes | Top Rank's Payments History Report dated June 10, 2009. See Dkt. No. 123-5. | Object pursuant to FRE 401, 403, 802 |
| 5 | Yes | Documents from *Bryan Pérez & Héctor Soto Response to Request for Production of Documents, pages* 297-300; 302-304; 375-377; 386-389; 398-404 | Object pursuant to FRE 401, 403, 802 |
| 6 | Yes | Javier Cortés' Pre-Audit Interview Memo dated December 17, 2009. See Dkt. No. 102-14 | Object pursuant to FRE 401, 403, 802 |
| 7 | Yes | Penalty Approval Forms for years 2006-2008. See Dkt. No. 102-17. | Object pursuant to FRE 401, 403, 802 |
| 8 | Yes | IRS Form 886-A – IRS Final Determination. See Dkt. No. 102-18. | Object pursuant to FRE 401, 403, 802 |

| Plaintiff Id. No. | Authentication Stipulated | Document Description | U.S. Objections |
|---|---|---|---|
| 9 | Yes | IRS Notice of Levy dated April 26, 2012. See Dkt. No. 102-20. | Object pursuant to FRE 401, 403, 802 |
| 10 | Yes | IRS Form 4549-A for years 2005 – 2006, prepared by Javier Cortés, dated November 24, 2009. | Object pursuant to FRE 401, 802.  This IRS document was superseded by IRS Form 4549 dated December 11, 2009. |
| 11 | Yes | IRS Form 4549 for year 2006, prepared by Javier Cortés, dated December 11, 2009. | The United States has marked this document as an exhibit. |

**Defendant Identification Documents:**

| US Ex. No. | Date Offered | Marked | Admitted | Objections | Document Description |
|---|---|---|---|---|---|
| A | | | | No objection from Plaintiff. | Certified Transcript of Assessments and Payments for Plaintiffs Miguel Cotto and Melissa Guzman for their income taxes for the year 2005 |
| B | | | | No objection from Plaintiff. | Certified Transcript of Assessments and Payments for Plaintiffs Miguel Cotto and Melissa Guzman for their income taxes for the year 2006 |
| C | | | | No objection from Plaintiff. | Certified Transcript of Assessments and Payments for Plaintiffs Miguel Cotto and Melissa Guzman for their income taxes for the year 2007 |

| US Ex. No. | Date Offered | Marked | Admitted | Objections | Document Description |
|---|---|---|---|---|---|
| D | | | | No objection from Plaintiff. | Certified Transcript of Assessments and Payments for Plaintiffs Miguel Cotto and Melissa Guzman for their income taxes for the year 2008 |
| E | | | | No objection from Plaintiff. | IRS Forms 4549 Income Tax Examinations Changes related to Plaintiffs for the years 2006 through 2008 |
| F | | | | This document has been stipulated as a joint exhibit. | Bout Agreement between Cotto and Top Rank to fight Muhammed Abdulaev |
| G | | | | This document has been stipulated as a joint exhibit. | Bout Agreement between Cotto and Top Rank to fight Ricardo Torres |
| H | | | | This document has been stipulated as a joint exhibit. | Bout Agreement between Cotto and Top Rank to fight Paul Malignaggi |
| I | | | | This document has been stipulated as a joint exhibit. | Bout Agreement between Cotto and Top Rank to fight Carlos Quintana |
| J | | | | This document has been stipulated as a joint exhibit. | Bout Agreement between Cotto and Top Rank to fight Zab Judah |
| K | | | | This document has been stipulated as a joint exhibit. | Bout Agreement between Cotto and Top Rank to fight Sugar Shane Mosley |

| US Ex. No. | Date Offered | Marked | Admitted | Objections | Document Description |
|---|---|---|---|---|---|
| L | | | | This document has been stipulated as a joint exhibit. | Bout Agreement between Cotto and Top Rank to fight Alfonso Gomez |
| M | | | | This document has been stipulated as a joint exhibit. | Bout Agreement between Cotto and Top Rank to fight Antonio Margarito |
| N | | | | This document has been stipulated as a joint exhibit. | Promotional Rights Agreement between Cotto and Top Rank |
| O | | | | This document has been stipulated as a joint exhibit. | Amended Promotional Rights Agreement between Cotto and Top Rank |
| P | | | | Plaintiff objects the proposed document on relevance grounds. | Expert Report of James J. Thomas, III |
| Q | | | | Plaintiff objects the proposed documents on grounds that the witness is or should be available to offer testimony at trial. | Deposition Transcript of Robert Arum-Excerpts to be identified at a later date |
| R | | | | This document has been stipulated as a joint exhibit. | Deposition Transcript of Ramon Sanabria - Excerpts to be identified at a later date |

| US Ex. No. | Date Offered | Marked | Admitted | Objections | Document Description |
|---|---|---|---|---|---|
| S | | | | Plaintiff objects on the grounds of the Best Evidence Rule. | Email and Draft Bout Agreement (pp TR 292-309) |
| T | | | | Plaintiff objects the proposed document on relevance grounds. | Email between Top Rank and Penagaricano (Ex. 24) (pp TR 225-228) |
| U | | | | Plaintiff objects the proposed document on relevance grounds. | Email between Top Rank and Penagaricano (Ex. 5) (TR 118-121; 357-364) |
| V | | | | No objection from Plaintiff. | Email between Top Rank and Phil Landman on training (ppTR 278-281) |
| W | | | | Plaintiffs object the proposed document on grounds that the witness is available to be called to give testimony at trial.<br><br>The Responses proposed may be used by Defendant pursuant to the Federal Rules of Civil Procedure and Evidence. | Cotto's Responses to Interrogatories/ Request for Admissions |

**Joint Exhibits:**

| Exhibit No. | Document Description |
|---|---|
| I | Bout Agreement between Cotto and Top Rank to fight Muhammed Abdulaev |
| II | Bout Agreement between Cotto and Top Rank to fight Ricardo Torres |
| III | Bout Agreement between Cotto and Top Rank to fight Paul Malignaggi |
| IV | Bout Agreement between Cotto and Top Rank to fight Carlos Quintana |
| V | Bout Agreement between Cotto and Top Rank to fight Zab Judah |
| VI | Bout Agreement between Cotto and Top Rank to fight Sugar Shane Mosley |
| VII | Bout Agreement between Cotto and Top Rank to fight Alfonso Gomez |
| VIII | Bout Agreement between Cotto and Top Rank to fight Antonio Margarito |
| IX | Promotional Rights Agreement between Cotto and Top Rank |
| X | Amended Promotional Rights Agreement between Cotto and Top Rank |
| XI | Deposition Transcript of CPA Ramon Sanabria |

## VII.    Expert Witnesses

**Plaintiff:**

None.

**Defendant:**

James J. Thomas, II

Mr. Thomas has been identified as the Government's expert witness. Mr. Thomas, who has close to 30 years of expertise in the boxing industry including negotiating contracts on behalf of boxers, will testify about the business-side or economics of the boxing industry. Mr. Thomas will testify that generally a boxer is paid by a promoter for fighting in a boxing match since that generates the economic value for the promoter. The

contracts in this case are consistent with this custom and practice.  Generally in the boxing industry, a boxer is not paid to do the following: (1) to cooperate in publicity or promotional events; (2) to train for a fight; and (3) for his grant to the promoter of the intangible rights necessary to stage or broadcast a boxing match.  The contracts, at issue in this case, are consistent with the customs and practice in the boxing industry.  Miguel Cotto was not paid to promote or publicize his fights.  He was not paid to train.  Finally, Miguel Cotto was not paid for his granting of intangible rights related to the fights.

## VIII.   CLAIMS OR DEFENSES DEEMED WAIVED OR ABANDONED

### Plaintiff:

None at this time.

### Defendants:

None at this time.

## IX. PENDING MOTIONS

None at this time.

## X. ESTIMATE OF NUMBER OF DAYS REQUIRED FOR EACH PARTY'S PRESENTATION OF THE CASE AT TRIAL

**Plaintiff:** Four days.

**Defendant:** Four days.

## XI. SUGGESTED DATE FOR THE COMMENCEMENT OF TRIAL

At the Court's earliest convenience, on or after November 14, 2022.

## XII. CONSENT TO THE JURISDICTION OF A MAGISTRATE JUDGE

Not at this time.

39

**WHEREFORE**, appearing parties very respectfully request from this Honorable Court that it approve the aforementioned document and adopt it as the Pre-Trial Order governing the Trial of the captioned matter, if applicable.

**WE HEREBY CERTIFY** that on this date we have electronically filed copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will notify all attorneys of record.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 23rd day of March 2022.

| *Plaintiff's Attorney:* | *Defendant's Attorney:* |
|---|---|
| | */s/ Beatriz T. Saiz* |
| MARICHAL, HERNÁNDEZ, SANTIAGO & JUARBE, LLC | BEATRIZ T. SAIZ |
| PO Box 190095 | GOKCE T. YUREKLI |
| San Juan, PR 00919-0095 | WILLIAM J. HARRINGTON |
| Tel: (787)758-8029 / (787)753-1565 | Trial Attorneys, Tax Division |
| Fax: (787)754-0109 / (787)763-1704 | USDC-PR Bar # G00302 |
| | U.S. Department of Justice |
| /s/ Josué A. Rodríguez Robles | P.O. Box 227 |
| JOSUÉ A. RODRÍGUEZ-ROBLES | Washington, D.C. 20044 |
| USDC P.R. No.216608 | Telephone: (202) 307-6585 |
| jrodriguez@mhlex.com | Facsimile: (202) 514-6866 |
| | Beatriz.T.Saiz@usdoj.gov |
| /s/ Rafael M. Santiago Rosa | Gokce.T.Yurekli@usdoj.gov |
| RAFAEL M. SANTIAGO ROSA | William.J.Harrington@usdoj.gov |
| USDC P.R. No. 211705 | |
| rsantiago@mhlex.com | |
| | |
| /s/ Mario E. Dávila | |
| MARIO E. DÁVILA | |
| USDC P.R. No. 306007 | |
| mdavila@mhlex.com | |